## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Holylandmarket.com L.L.C. and Dr. Richard Kurnow,

        Plaintiffs,

vs.

Boris Tsitron, Mikhail Fenko, Hollyland Gifts Corp. d/b/a Strong Faith, Elena Vradii, and Bethlehem Gifts Corp. d/b/a Jerusalem Market,

        Defendants.

Court File No. 0:22-cv-01762

**JURY TRIAL REQUESTED**

---

## COMPLAINT

---

Plaintiffs Holylandmarket.com L.L.C. (**"HLM"**), and Dr. Richard Kurnow (**"Dr. Kurnow"**) (collectively **"Plaintiffs"**), as and for their Complaint against Defendants Boris Tsitron (**"Tsitron"**), Mikhail Fenko (**"Fenko"**), Hollyland Gifts Corp. d/b/a Strong Faith (**"Strong Faith"**), Elena Vradii (**"Vradii"**), and Bethlehem Gifts Corp. d/b/a Jerusalem Market (**"Bethlehem"**) (collectively, **"Defendants"**), states and alleges as follows:

### The Parties

1.    Plaintiff HLM is a Minnesota limited liability company with its principal place of business at 11975 Portland Ave, Suite 108, Burnsville, Minnesota 55337.

2.    Plaintiff Dr. Kurnow is a natural person residing in the State of Florida with

an address at P.O. Box 55, Istachatta, FL 34636.

3.      Upon information and belief, Defendant Tsitron is a natural person

residing at 8 Huyler Road, Branchburg, New Jersey 08876. Tsitron, alone or with his co-

defendants, operates or co-owns multiple storefronts on Amazon.com (**"Amazon"**),

eBay.com (**"eBay"**), Walmart.com (**"Walmart"**), and Etsy.com (**"Etsy"**), as well as on

Facebook, Google, and his own respective websites.

4.      Upon information and belief, Defendant Fenko is a natural person residing

at 1130 Brighton Beach Ave, 6AA, Brooklyn, New York, 11235. Fenko operated the

Amazon storefront Hollyland Gifts Corp. d/b/a Strong Faith.

5.      Upon information and belief, Defendant Strong Faith is a corporation with

its principal place of business at 1130 Brighton Beach Ave, 6AA, Brooklyn, New York,

11235.

6.      Upon information and belief, Defendant Vradii is a natural person residing

at 275 Bay 37th Street, Apt. C5, Brooklyn, New York, 11214. Vradii operated the Amazon

storefront Bethlehem Gifts Corp. d/b/a Jerusalem Market.

7.      Upon information and belief, Defendant Bethlehem is a domestic business

corporation with its principal place of business at 275 Bay 37th Street, Apt C5, Brooklyn,

New York, 11214.

8.      Upon information and belief, Defendants operate storefronts on Amazon,

eBay, Walmart, and Etsy in conjunction or affiliation with businesses domiciled in Israel,

including but not limited to, JerusalemSandals, Nazareth Treasures, and Holy Land Store.[1]

## Jurisdiction and Venue

9.      This Court has personal jurisdiction over Defendants in that all Defendants do business in this District and the acts complained of herein occurred in this District.

10.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Complete diversity exists as Plaintiff HLM is a limited liability company registered in the State of Minnesota.

11.      Plaintiff Dr. Kurnow is a citizen of the State of Florida.

12.      Defendant Tsitron is a citizen of New Jersey.

13.      Defendants Fenko and Vradii are residents of New York, and Strong Faith and Bethlehem are business entities domiciled in New York.

14.      The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

15.      This Court has subject matter jurisdiction over Plaintiff's claims arising under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*, pursuant to 28

---

[1] In addition, Defendants trade, or have traded, on Amazon, eBay, Walmart, and Etsy under multiple stores and/or usernames, including but not limited to, Holy Land Store, Holy Land, holylandsouvenirs, lionofjudah78, and STRONGFAITHByMikhail, as well as through their myfaith.ship website.

3

U.S.C. §§ 1331 and 1338(a), insofar as such claims arise under the laws of the United

States.

16.     This Court has supplemental subject matter jurisdiction over Plaintiff's

remaining pendent state law claims against Defendant pursuant to 28 U.S.C. § 1367,

insofar as these claims are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the

United States Constitution.

17.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because many

of the events giving rise to the claims in this Complaint occurred in this District.

18.     Immediate injunctive relief is sought pursuant to Fed. R. Civ. P. 65 and the

Declaratory Judgments Act, 28 U.S.C. §§ 2201 *et seq.*

## Factual Allegations

19.     Dr. Kurnow has been in the business of designing and selling prayer

shawls, menorahs, shofars, mezuzahs, biblical replicas (for example, "Ark of the

Covenant"), messianic, and other Jewish and Christian gift items since 2004.

20.     On August 31, 2006, Dr. Kurnow was issued a copyright, Reg. No.

VA0001389857 (the **"Kurnow Copyright"**), titled "New Covenant Messianic Tallit," for a

pictorial design for messianic tallits. A copy of the Certificate of Registration is attached

hereto as Exhibit 1.

21.    The Kurnow Copyright covers the following design features, each of which is an original work created by Dr. Kurnow: the visual border design; the Messianic Symbol embroidered on the four corners with four different and specific scriptures on each corner; the prayer on the collar; and the square patches, on the four corners, featuring the Messianic Symbol with a border around the patches with a different and specific scripture on each corner. The Messianic Symbol is a combination of the Temple Menorah, Star of David, and ichthys (fish symbol).

22.    The Kurnow Copyright visually and descriptively looks as follows:



 

The Atarah (the collar) has the messianic symbol in gold metallic on both sides and has a messianic prayer written by Dr. Kurnow in Hebrew which says: "Blessed are you O' Lord

King of the Universe Who has fulfilled all of the law through Yeshua the Messiah and has

covered us with His righteousness" (this prayer is part of the copyright). The four

Scriptures used in the copyright protected design on the four corners are:

    a.    2 Corinthians 5:21 "For He made Him who knew no sin to be sin for us, that we might become the righteousness of God in Him."

    b.    Isaiah 53:5 "But He was wounded for our transgressions, He was bruised for our iniquities; The chastisement for our peace was upon Him, And by His stripes we are healed."

    c.    Matthew 14:36 "And they desired of Him that they might only touch the hem of His garment. And as many as touched it were made perfectly well."

    d.    Malachi 4:2 "But to you who fear My name The Sun of Righteousness shall arise With healing in His wings"

23.    Founded in 2001, HLM is a longstanding, successful, and respected

company headquartered in Minnesota engaged in the business of selling unique, high-

quality religious and cultural items from the "Holy Land" (i.e., the region surrounding

Jerusalem that is religiously and culturally significant to several Abrahamic religions,

including Christianity, Judaism, and Islam).

24.    Pursuant to an amended Settlement and License Agreement, as well as a

Limited Copyright Assignment, HLM sells messianic tallits embodying Dr. Kurnow's

design with Dr. Kurnow's express permission and consent. A copy of the First

Amendment to Settlement and License Agreement (**"License Agreement"**) is attached

hereto as Exhibit 2. A copy of the Limited Copyright Assignment (**"Assignment**

**Agreement"**) is attached hereto as Exhibit 3.

6

25.    Only three companies – HLM, Shofars From Afar (**"Shofars"**) (owned by Dr. Kurnow), and Three Arches USA (**"Three Arches"**) – have licenses to manufacture, sell, and distribute works embodying the Kurnow Copyright.

26.    HLM also sells a vast collection of items from the Holy Land, including olive wood, rosaries, shoes, messianic, Judaica, kitchenware, stones, jewelry, ceramic and glass, anointing oils, lamps and candles, holy books, icons, and more.

27.    HLM also sells messianic tallits (often called messianic prayer shawls), which are tasseled garments worn by practitioners of certain religions during prayer. It is common for messianic tallits to have an aesthetic design element to them – such as the Kurnow Copyright.

28.    HLM's messianic tallits feature the design elements of the Kurnow Copyright. The tallits are made from acrylic material and feature a white background with a royal blue and gold striped pattern. Customers can also select among other colors, including but not limited to, navy blue, purple, or pink to replace the royal blue stripes.  The Messianic Symbol is embroidered in gold thread on the four corners of the tallit with the four different scriptures on each corner and long blue and white fringe stemming from each corner. The tallit also has the messianic prayer written by Dr. Kurnow in Hebrew with a border design on the collar. Customers receive a similarly designed cloth bag featuring the Messianic Symbol to store the tallit. Pictures of the messianic tallits and cloth bag are attached as Exhibit 4.

29.     Plaintiffs sell their products, including the messianic tallits, mostly on online reseller platforms such as Amazon, eBay, Walmart, and Etsy, as well as on Facebook, Google, and their own respective websites. Examples of Plaintiffs' product listings are attached as Exhibit 5.

30.     Plaintiffs' respective livelihoods depend on the revenue derived from these online retail platforms.

31.     Defendants all sell competitive products on the same online retail platforms. In 2015, Plaintiffs became aware of Defendant Tsitron and determined he was the driving force and principal behind a number of online retail platforms selling products similar to Plaintiffs.

32.     Recently, Plaintiffs discovered that Defendants were manufacturing, selling, and distributing goods that infringe on the Kurnow Copyright, and in turn violate and infringe upon HLM's exclusive license.

33.     Upon information and belief, Bethlehem and JerusalemSandals are or were under the direct or indirect control of Defendant Tsitron. In fact, Tsitron is affiliated with all of the named Defendants herein. For example, Elena Vradii, the listed owner of Bethlehem, is Tsitron's mother-in-law; JerusalemSandals is owned by Tsitron's sister-in-law; and Strong Faith and Nazareth Treasures are owned by affiliates of Tsitron.

34.     In late 2019, Dr. Kurnow determined that three specific online resellers, Defendants Bethlehem and Strong Faith, as well as JerusalemSandals, were manufacturing, selling, and distributing goods that infringe on the Kurnow Copyright.

35.     On November 24, 2019, Plaintiffs submitted an infringement Takedown Notice pursuant to the Digital Millennium Copyright Act (**"DMCA Takedown Notice"**) to Amazon informing them of the infringing products being sold by Strong Faith and Vradii. A true and correct copy of the Takedown notice is attached as Exhibit 6.

36.     On or about December 20, 2019, Dr. Kurnow, through counsel, sent Strong Faith a cease-and-desist letter alleging that it was infringing on the Kurnow Copyright (this cease-and-desist letter predated any of Tsitron's unpublished and invalid copyrights). A true and correct copy of this letter is attached as Exhibit 7.

37.     On or about November 12, 2020, after discovering that Tsitron used an unpublished and invalid copyright which he filed in or around February 2020 to take down sellers on Amazon who were selling Dr. Kurnow's exact copyright protected design, Dr. Kurnow sent Tsitron a second cease-and-desist letter relating to his blatant copyright infringement of the Kurnow Copyright. A true and correct copy of this letter is attached as Exhibit 8.

38.     Thereafter, Tsitron and his affiliates (the remaining Defendants) developed a plan and course of action to unlawfully limit his competition and retaliate against Plaintiffs.

39.     As part of Tsitron's plan, on February 12, 2020, Tsitron was issued a copyright, Reg. No. VAu001388468 (the **"Tsitron Copyright"**), titled "Messianic Shawl."

40.     Defendants' messianic tallits are identical to Plaintiffs. They feature the same material and same striped pattern. Customers can choose royal blue, navy blue, purple, pink, green or light blue for the colored stripes. The prayer shawls have the identical Messianic Symbol embroidered in gold thread on the four corners of the shawl with the identical four scriptures on each corner, in the same font, and the long blue and white fringe stemming from each corner. The tallits also have Dr. Kurnow's messianic prayer with the border design on the collar. Customers receive a cloth bag featuring the Messianic Symbol to store the tallit that is identical to the bag sold by Plaintiffs. Pictures of Defendants' tallits and bag are attached as Exhibit 9.

41.     Defendants' messianic tallits are sold online with Amazon, Etsy, Walmart, and eBay in direct competition with Plaintiffs. Examples of Defendants' product listings are attached as Exhibit 10.

42.     Because Defendants' messianic tallits are identical to Plaintiffs, and consumers cannot tell the difference between the competing products, Plaintiffs have lost revenue and online sales due to Defendants' infringement on the Kurnow Copyright.

43.     Despite Plaintiffs' multiple DMCA Takedown Notices to reseller platforms describing in detail Defendant's infringement on the Kurnow Copyright, Defendants

continued to manufacture, sell, and distribute goods that infringed on the Kurnow Copyright.

44.     On December 7, 2020, HLM's counsel sent a cease-and-desist letter to Tsitron. A true and correct copy of the December 7, 2020, letter is attached hereto as Exhibit 11.

45.     On June 7, 2021, Dr. Kurnow's counsel sent a letter to Bethlehem and Vradii, demanding Bethlehem cease and desist in its infringing actions. The June 7, 2021, letter detailed all of the listings in which Bethlehem and/or Vradii were selling products (specifically messianic shawls) infringing on the Kurnow Copyright. A true and correct copy of the June 7, 2021, letter is attached hereto as Exhibit 12.

46.     Bethlehem (via Tsitron and Vradii) refused to cease its unlawful activity and instead, upon information and belief, set up numerous different Amazon reseller stores under names of family and friends.

47.     HLM became aware that Defendant Tsitron was stealing its product images and using them to market products on his and other Amazon reseller stores under his control. *Supra* Exhibits 9 and 10. Between 2016 and 2019, HLM reported Tsitron and his other reseller stores to Amazon over 50 times for copyright infringement.

48.     Plaintiffs again told Defendants to cease their unlawful activity; when they refused, Plaintiffs were forced to submit DMCA Takedown Notices to Amazon.

49.      In the late summer of 2021, Dr. Kurnow messaged JerusalemSandals

through Amazon and requested that JerusalemSandals remove its product listings that

infringed upon the Kurnow Copyright, including listings for messianic shawls.

JerusalemSandals refused to take down the product listings. As a result, Dr. Kurnow was

forced to file a DMCA Takedown Notice against JerusalemSandals on Amazon for its

infringing actions. Attached as Exhibit 13 is a true and correct copy of correspondence

between Dr. Kurnow and Tsitron.

50.      In September 2021, Tsitron called Dr. Kurnow and requested that he

retract the DMCA Takedown Notice against JerusalemSandals. Dr. Kurnow explained

that he was the legal copyright holder of the Kurnow Copyright, and that

JerusalemSandals was not licensed to sell his copyright protected messianic shawl.

51.      Thereafter, and in direct response to Plaintiffs' actions, Defendant Tsitron

obtained numerous other unpublished copyrights and set out on a path of retaliation

and tortious interference.

52.      Tsitron reported and facilitated the takedown of Dr. Kurnow's website,

shofarfromafar.com, by falsely reporting copyright infringement activity on Dr. Kurnow's

part to the shofarsfromafar.com web hosting service, "Just Host". Attached as Exhibits

14 and 15 are true and correct copies of the takedown notice and correspondence

between Dr. Kurnow and Just Host.

53.     Defendant Tsitron's plan and course of action has been to file DMCA

Takedown Notices with Amazon, eBay, Walmart, and Etsy, on listings belonging to

Plaintiffs.

54.     Defendant Tsitron's plan was calculated and diabolical: he would not

submit DMCA Takedown Notices all year long – so as to avoid undue attention from

Amazon, eBay, Walmart, and Etsy – but rather would await the busiest time of the year:

the holiday season. Defendant's strategy was, and remains as of 2021-2022, to begin

filing DMCA Takedown Notices against Plaintiffs starting in October of each year and

continuing through year end, so that customers ordering religious items for the holidays

(by far the busiest time of the year, with sales and profits normally exceeding all other

parts of the year combined) would not be able to purchase those items from Plaintiffs

from late October through late December of each year (because their product listings on

Amazon and elsewhere had been illegally removed pursuant to Defendant's fraudulent

DMCA Takedown Notices).

55.     Defendant Tsitron's DMCA Takedown Notices to Amazon, Etsy, Walmart,

and eBay regarding Plaintiffs' respective product listings are false and submitted in bad

faith, as Tsitron is and has been aware of the Kurnow Copyright for many years, and that

Plaintiffs have been selling identical products to the ones for which Defendant Tsitron

has submitted copyright infringement complaints years before Tsitron and Defendants

began selling. For example, Plaintiffs began selling these products on Amazon in 2009,

well before Tsitron and Defendants began selling on Amazon in 2015.

56.    The consequences of Tsitron's false infringement claims against Plaintiffs

are severe. For example, once a complaint is made to Amazon, Amazon's copyright

complaint notice department automatically shuts the listing down and requires a

response from the alleged violator (here, Plaintiffs). Amazon generates an e-mail

notifying the alleged infringer of the removal of the alleged infringer's listings:

> Hello,
>
> We removed some of your listings because we received a report from a rights
> owner that they may infringe the rights owner's copyright. The rights owner
> communication about the alleged infringement and the listings we removed are
> at the bottom of this message.
>
> Why did this happen?
> We received a report from a rights owner alleging that one or more of your
> listings may be infringing the intellectual property rights of others. Listing content
> infringing on the intellectual property of others is against our policies.

Multiple examples of such e-mails that Plaintiffs received from Amazon in response to

Defendants' numerous DMCA Takedown Notices are attached as Exhibit 16.

57.    After receiving the DMCA Takedown Notice, Plaintiffs were forced to

respond with a DMCA counter-notice and explain that they either had a pre-existing

copyright, or that Defendant Tsitron's copyrights do not cover the products being sold

by Plaintiffs.

58.     Once the response is received, it takes Amazon *at least 14 days* to review, and during this 14-day period, the alleged offender's listing is not active, making it so the alleged offender (here, Plaintiffs) cannot sell its products on Amazon.

59.     From there, Amazon notifies the complainant (here, Defendants) of the response and allows the complainant 10 days to file a lawsuit alleging copyright infringement. If the complainant does not file a lawsuit, Amazon reinstates the alleged offender's listing.

60.     However, in the scenario described in paragraphs 56-59 above, the damage is already done because Amazon has removed the alleged offender's competitive product listing from Amazon for close to a month (and often over a month), resulting in substantial lost sales. Further, each of Tsitron's false reports to Amazon puts Plaintiffs' respective Amazon accounts at risk of suspension (the larger the quantity of infringement complaints against a particular seller, the more likely Amazon is to suspend that seller's account(s)).

61.     Defendant Tsitron, with the participation of his co-Defendants, has engaged in and continues to engage in the above conduct solely to monopolize the market and bar Plaintiffs from lawfully selling their products.

62.     On or about November 23, 2020, HLM received a message from Walmart's service portal, stating in relevant part:

Hello Holy Land Market,
This email is to inform you that we have unpublished certain items from your

Walmart Marketplace inventory as we received a claim that the images used are copyrighted by Boris Tsitron. The unpublished item(s) are/is listed below:

**931684055**
**892634029**
**888845691**
**876007186**
**837206151**
**744832290**
**342529259**
**280894573**
**135186901**

A true and correct copy of this message is attached as Exhibit 17.

63.     Of the 9 items advertised for sale by HLM that were unpublished (removed) by Walmart at the request of Defendant Tsitron listed above (by item number: 931684055, and so on), none of which stemmed from valid claims for copyright infringement on the part of Defendant Tsitron. Rather, Defendant Tsitron continued to execute his strategy of abusing the copyright infringement reporting systems of Walmart to unfairly and illegally remove HLM's listings.

64.     On November 23, 2020, HLM received three additional messages from Walmart's service portal, notifying HLM that an additional 20 listings for sale (most of which were related to HLM's messianic tallits) were removed by Walmart at the request of Defendant Tsitron. True and correct copies of these messages are attached as Exhibits 18 – 20.

65.     None of the complaints stemmed from valid claims for copyright infringement on the part of Defendant Tsitron.

66.     On December 9, 2020, HLM's attorney sent a letter to the Walmart legal department explaining Tsitron's false reporting on Walmart's website and those of other online retailers and sent a cease-and-desist letter to Tsitron as well. A true and correct copy of the December 9, 2020, letter is attached as Exhibit 21.

67.     In or around November 2020, Defendant Tsitron or his agents submitted a fraudulent DMCA Takedown Notice to eBay, alleging that HLM was infringing on the owner's copyright for the Messianic Prayer Shawl, which in fact was copyright protected by Dr. Kurnow (copyright number VA0001389857). As a result of the fraudulent DMCA Takedown Notice, eBay removed 33 of HLM's product listings for sale. A true and correct copy of the message is attached as Exhibit 22.

68.     On December 4, 2020, HLM's attorneys submitted a letter to eBay legal affairs requesting it reinstate HLM's product listings. A true and correct copy of the December 4, 2020, letter is attached as Exhibit 23.

69.     Since December 2020, Defendant Tsitron or his agents have filed seventy-eight (78) Amazon DMCA Takedown Notices against HLM alone, resulting in improper removal of its product listings and considerable lost sales.

70.     Each notification from Amazon of Defendant Tsitron's DMCA Takedown Notice is identical (*see* Exhibit 13), but some involve more than one of Plaintiffs' products, causing HLM to lose a substantial amount of its revenue.

71.     Of the 78 Amazon copyright complaints brought by Tsitron or his agents (detailed below) against HLM, not once did Tsitron or his agents initiate legal action, and all of HLM's listings eventually were reinstated (after they each had been removed and delisted for almost a month, or sometimes 3-4 months).

72.     All 78 DMCA Takedown Notices submitted to Amazon against HLM were submitted by Defendant Tsitron or his agents. A chart identifying each DMCA Takedown Notice against HLM is attached as Exhibit 24.

73.     Since October 2021, Defendant Tsitron or his agents have filed at least eight (8) Amazon copyright complaints against Dr. Kurnow and/or Shofars from Afar, amounting to improper removal of its product listings and considerable lost sales.

74.     Of the 8 Amazon copyright complaints brought by Defendant Tsitron and/or his co-Defendants against Dr. Kurnow and/or Shofars from Afar, not once did he initiate legal action, and Dr. Kurnow and/or Shofars from Afar's listings eventually were reinstated.

75.     In a brazen showing, Tsitron recently filed a false DMCA Takedown Notice against Dr. Kurnow for selling products with the exact design of the Kurnow Copyright. By submitting this latest false report, Tsitron is essentially alleging that Dr. Kurnow is infringing upon his own copyright (the Kurnow Copyright). A true and correct copy of the Takedown Notice is attached as Exhibit 25.

76.     HLM, by its attorneys, submitted evidence to Amazon that Defendant

Tsitron was a serial abuser of the Amazon DMCA Takedown Notice system, and that he

was also registering copyrights for unpublished content.

77.     On December 4, 2020, HLM, by its attorneys, submitted an arbitration

request to Amazon pursuant to HLM's Business Solutions Agreement (**"BSA"**) with

Amazon. A true and correct copy of Amazon's BSA is attached as Exhibit 26 (*see* Section

18).

78.     HLM's arbitration request sought the following relief:

A.     The immediate reinstatement of the suspended ASINs;
B.     The reversion of Jerusalem Market's modifications to the ASINs; and
C.     Confirmation that the IP claims of Jerusalem Market and its affiliates are
       invalid.

A true and correct copy of HLM's arbitration request is attached as Exhibit 27.

79.     Amazon, after accepting HLM's arbitration request, verifying HLM's

evidence, and confirming that Tsitron and his co-conspirators were serial frivolous

copyright infringement complaint filers, banned Tsitron from making any further

copyright complaints on Amazon, but only against HLM. A true and correct copy of

Amazon's findings are attached as Exhibit 28.

80.     On August 12, 2021, Amazon's attorneys wrote the following e-mail to

HLM's attorney, confirming Defendant Tsitron's ban by Amazon, referring to Tsitron as

"abusive":

Hi Mario,
Thank you for your patience. Amazon confirmed that the abusive RO cannot submit complaints on the Amazon platform going forward. Amazon also reinstated ASINs B013O8QU1W, B01LZVQ7HV, B01M5IKPIZ, B06X3XFNL8, B0738Y6W9X, B01DTGL2O4, B01MD0TKHM, B01M2BSMY4 so your client can list them now. Further, after additional investigation into Jerusalem Market and Strong Faith it was found that both accounts committed Code of Conduct violation and Amazon took appropriate actions against these accounts.
All the best,
Annamaria Taskai | Davis Wright Tremaine LLP

*Id.*

81.     Since Amazon's action to ban Defendant Tsitron from filing DMCA Takedown Notices, Defendant Tsitron has enlisted his attorney, Alex Zubatov ("**Zubatov**"), to make the unlawful copyright complaints/DMCA Takedown Notices on Amazon to get Plaintiffs' products temporarily delisted. A true and correct copy of DMCA Takedown Notice is attached as Exhibit 29.

82.     Plaintiffs are aware that Zubatov represents Tsitron because Zubatov authored a response letter to one of Dr. Kurnow's cease and desist letters. A true and correct copy of the response letter is attached as Exhibit 30.

83.     Plaintiffs are currently investigating whether attorney Zubatov had knowledge of Defendant Tsitron's ban and made the complaints on Defendant Tsitron's behalf despite that knowledge.

84.     Defendant Tsitron's bad motives are further evidenced by the fact that he made separate complaints against Plaintiffs for completely distinct products (a prayer shawl, crown of thrones, menorah, and ceramics) using the same alleged copyright,

claiming infringement even though those products are completely distinct and could not possibly be protected by the same copyright.

85.     On July 26, 2021, Dr. Kurnow reported Strong Faith to Etsy's legal department and filed a DMCA take down notice. Even though Fenko, the listed owner of Strong Faith, knew that Dr. Kurnow was the rightful copyright owner of the Kurnow Copyright (due to his receipt of the previous cease and desist letter from Dr. Kurnow to Strong Faith), Fenko illegally retaliated and filed a DMCA counter notice and continues to sell infringing products on Etsy.

86.     Upon information and belief, Defendant Strong Faith has made over 577 sales for products infringing on Plaintiffs' copyright on Etsy alone. *Supra* Exhibit 10. Strong Faith has over 18 active listings on Etsy for different color and size variations of the infringing messianic tallit to attract as many customers as possible.

87.     Most recently, in November and December of 2021, Defendants Fenko and Vradii submitted applications to register trademarks with the United States Patent and Trademark Office (**"USPTO"**) for several wordmarks and existing tradenames. Each of the applications attempt to trademark a generic wordmark, merely descriptive without secondary meaning wordmark, or existing tradename that Plaintiffs use in connection with the various goods they sell online.

88.     On November 22, 2021, Defendant Vradii submitted an application to register the wordmark "Prayer Shawl" under international class 25 in connection with

hats, scarves, shawls, tallits, and headscarves. A true and correct copy of the application for trademark registration is attached as Exhibit 31.

89.     The "Prayer Shawl" wordmark is generic because it indicates the category of goods Defendant Vradii listed in connection with her application for trademark registration.

90.     Plaintiffs began listing and selling multiple goods in connection with the "Prayer Shawl" wordmark as early as June 30, 2013. Plaintiffs rely on the "Prayer Shawl" wordmark to attract customers to their listings of goods online.

91.     On November 27, 2021, Defendant Vradii submitted an application to register the wordmark "Armenian Ceramic" under international class 21 in connection with dishes, ceramic figurines, ceramic sculptures, vases, serving spoons, cups, decorative tiles not for building, and souvenir plates. A true and correct copy of the application for trademark registration is attached as Exhibit 32.

92.     The "Armenian Ceramic" wordmark is generic because it indicates the category of goods Defendant Vradii listed in connection with her application for trademark registration.

93.     Plaintiffs began listing and selling multiple goods in connection with the "Armenian Ceramic" wordmark as early as March 29, 2011. Plaintiffs rely on the "Armenian Ceramic" wordmark to attract customers to their listings of goods online.

94.     On November 27, 2021, Defendant Vradii submitted an application to register the wordmark "Zytoon" under international class 20 in connection with various decorative crosses, jewelry, figures, ornaments, and statues made of wood, wax, plaster, or plastic. A true and correct copy of the application for trademark registration is attached as Exhibit 33.[2]

95.     "Zytoon" is an existing tradename used in connection with goods already sold on Amazon.

96.     Plaintiffs began listing and selling multiple goods using the "Zytoon" tradename as early as November 6, 2009. Plaintiffs continue to list and sell multiple goods in connection with the "Zytoon" tradename.

97.     Defendant Vradii does not own the "Zytoon" tradename and is not affiliated with the tradename holder.

98.     On November 29, 2021, Defendant Fenko submitted an application to register the wordmark "Holy Land Imports" under international class 20 in connection with various decorative crosses, jewelry, figures, ornaments, and statues made of wood, wax, plaster, or plastic. A true and correct copy of the application for trademark registration is attached as Exhibit 34.

---

[2] Plaintiff HLM filed a Trademark Trial and Appeals Board (**"TTAB"**) application for opposition, Serial No. 97144971, against Defendant Vradii's application for trademark registration of the "Zytoon" wordmark, and an extension has been granted.

99.    "Holy Land Imports" is an existing tradename used in connection with products already sold on Amazon.

100.    Plaintiffs began listing and selling multiple goods in connection with the "Holy Land Imports" tradename as early as October 5, 2009. Plaintiffs continue to list and sell multiple products under the "Holy Land Imports" tradename.

101.    Defendant Fenko does not own the "Holy Land Imports" tradename and is not affiliated with the tradename holder.

102.    On December 14, 2021, Defendant Fenko submitted an application to register the wordmark "Al Jamal" under international class 3 in connection with various soap bars. A true and correct copy of the application for application for trademark registration is attached as Exhibit 35.

103.    "Al Jamal" is an existing tradename used in connection with goods already sold on Amazon.

104.    Plaintiffs began listing and selling multiple goods in connection with the "Al Jamal" tradename as early as April 7, 2018. Plaintiffs continue to list and sell multiple goods in connection with the "Al Jamal" tradename. Plaintiffs rely on the "Al Jamal" tradename to attract customers to their listings of goods online.

105.    Defendant Fenko does not own the "Al Jamal" tradename and is not affiliated with the tradename holder.

24

106.   On December 17, 2021, Defendant Fenko submitted an application to register the wordmark "Jerusalem" under international class 21 in connection with various bowls, cups, serving spoons, ceramic sculptures and vessels, and decorative plates. A true and correct copy of the trademark registration is attached as Exhibit 36.

107.   The "Jerusalem" wordmark is merely descriptive without any secondary meaning because the "Jerusalem" wordmark commonly describes the origin of the goods offered by and listed in connection with Defendant Fenko's application for trademark registration.

108.   Plaintiffs began listing and selling multiple goods using the "Jerusalem" tradename as early as February 20, 2018. Plaintiffs continue to list and sell multiple goods in connection with the "Jerusalem" tradename. Plaintiffs rely on the "Jerusalem" tradename to attract customers to their listings of goods online.

109.   Defendant Fenko does not own the "Jerusalem" tradename and is not affiliated with the tradename holder.

110.   After a party files a trademark application, Amazon treats the party as owning the trademark (until the trademark is rejected by the USPTO, which could take months). As such, the party can report competing product listings on Amazon that allegedly violate the party's trademark by filing a takedown notice with Amazon (almost identical to the process for reporting a copyright violation). Amazon removes the

"infringing" product listing until it determines a violation has not occurred (which can take weeks or months).

111.    eBay, Walmart, and Etsy have similar takedown procedures for reporting and responding to alleged trademark infringement.

112.    Upon information and belief, Defendants Fenko and Vradii systematically filed these trademark registration applications in a bad-faith effort to remove Plaintiffs' product listings and force Plaintiffs out of business.

113.    If, for example, all of Plaintiffs' listings containing the word "Prayer Shawl" were removed from Amazon, eBay, Walmart, and/or Etsy, Plaintiff would lose hundreds of thousands of dollars.

114.    During the last week of May 2022, Dr. Kurnow's daughter purchased a messianic tallit from a seller on Amazon called Nazareth Treasures. Upon information and belief, this Nazareth Treasures is the same seller as the Nazareth Treasures owned by an affiliate of Tsitron and located in Israel. The package showed the tallit shipped from a post office in Somerville, New Jersey (a location where Defendants are known to reside or do business).

115.    The messianic tallit Dr. Kurnow's daughter received had the exact design, color, symbols, and prayers as the tallits sold by HLM and covered by the Kurnow Copyright. Attached as Exhibit 37 are true and correct pictures of the messianic tallit received from Nazareth Treasures.

116.    Defendants' acts of unlawful competition have caused Plaintiffs a substantial loss in sales for and must be enjoined to stop further unlawful actions and unfair competition by Defendants.

### Count I.  Copyright Infringement
(Against all Defendants)

117.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

118.    Dr. Kurnow is the original author and creator of the Kurnow Copyright.

119.    HLM, through its License Agreement with Kurnow, shares with Shofars and Three Arches an exclusive license to manufacture, sell, and distribute the Kurnow Copyright protected works.

120.    Defendants had access to Kurnow's Copyright protected work as it was openly available for sale and marketed, often in the same forums in which Defendants sell their products.

121.    On or about February 12, 2020, Tsitron surreptitiously obtained a copyright registration for a similar but slightly different "Messianic Shawl."

122.    The Tsitron Copyright does not protect any original works by Tsitron. Rather, the Tsitron Copyright is an attempt by Tsitron to copyright Kurnow's work and insulate himself from liability.

123.    Defendants had no permission, authorization, license or other right to infringe on the Kurnow Copyright protected work.

124.    Defendants acted deliberately, willfully, intentionally and purposefully, and with reckless disregard of and deliberate indifference to Plaintiffs' rights. Not only were Defendants given warning long before the commencement of litigation, but Defendant Tsitron responded by seeking and obtaining an invalid copyright on his own "Messianic Tallit" which merely embodies the elements of the Kurnow Copyright.

125.    Defendants' respective actions constitute separate actionable instances of copyright infringement.

126.    Plaintiffs have suffered actual damages as a direct and proximate result of Defendants' infringement of the Kurnow Copyright.

127.    Defendants have profited from their willful and knowing infringement of the Kurnow Copyright, selling infringing products throughout the United States.

128.    Pursuant to 17 U.S.C. § 504, Plaintiffs are entitled to recover actual damages and disgorgement of Defendants' unlawful profits attributable to the sale of infringing works, or, at Plaintiffs' discretion, statutory damages.

129.    Pursuant to 17 U.S.C. § 505, Plaintiffs are entitled to recover the "full costs" of litigation, including attorney's fees.

### Count II.  Tortious Interference With Contractual Relations
(Against all Defendants)

130.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

131.    Plaintiffs, each of them, have contractual relationships with online resellers such as Amazon, eBay, Walmart, Etsy, Google, and Facebook to sell and distribute the Kurnow Copyright protected works along with other related products described above.

132.    Defendants were aware of Plaintiffs' contracts, specifically their respective contracts with Amazon (including without limitation the BSA), because they are engaged in the same sale of products and utilize a similar seller contract with Amazon.

133.    Defendants have tortiously interfered with Plaintiffs' respective contractual relationships with Amazon, by submitting improper and unlawful copyright infringement complaints to Amazon to get Plaintiffs' products delisted in an effort to divert business away from Plaintiffs for the personal benefit and profit of Defendants.

134.    Defendants have tortiously interfered with Plaintiffs' respective contractual relationships with eBay, by submitting improper and unlawful copyright infringement complaints to Amazon to get Plaintiffs' products delisted in an effort to divert business away from Plaintiffs for the personal benefit and profit of Defendants.

135.    Defendants have tortiously interfered with Plaintiffs' respective contractual relationships with Walmart, by submitting improper and unlawful copyright infringement complaints to Amazon to get Plaintiffs' products delisted in an effort to divert business away from Plaintiffs for the personal benefit and profit of Defendants.

136.    Defendants have tortiously interfered with Plaintiffs' respective contractual relationships with Etsy, by submitting improper and unlawful copyright infringement complaints to Amazon to get Plaintiffs' products delisted in an effort to divert business away from Plaintiffs for the personal benefit and profit of Defendants.

137.    Defendants have tortiously interfered with Dr. Kurnow's contractual relationship with Just Host, by submitting improper and unlawful copyright infringement complaints to Just Host to get Dr. Kurnow's website shofarsfromafar.com taken down, in an effort to divert business away from Plaintiffs for the personal benefit and profit of Defendants.

138.    Defendants have made at least 88 false, bad faith complaints to Amazon, eBay, Walmart, Etsy, and Just Host, resulting in Plaintiffs' products being delisted temporarily and resulting in lost sales.

139.    Defendants have submitted several trademark applications for generic keywords like "prayer shawl", "Armenian Ceramic", and "Jerusalem" that Plaintiffs' use in their online product listings. Defendants are aware that Plaintiffs rely on the keywords to attract customers to their online product listings because Defendants use the same keywords to generate business.

140.    Defendants also submitted several trademark applications for registration of existing tradenames such as "Zytoon", "Al Jamal", "Nazareth Market Store", "Jerusalem," and "Holy Land Imports". Defendants do not own and are not affiliated

with the brands. Defendants are aware that Plaintiffs list and sell multiple products with each existing tradename.

141.    Defendants tortiously interfered with Plaintiffs' respective contractual relationships with Amazon, eBay, Walmart, Etsy, and Just Host by filing improper trademark applications, enabling them to file improper and unlawful reports of trademark and copyright infringement to Amazon, eBay, Walmart, Etsy, and Just Host to get Plaintiffs' products delisted in an effort to divert business away from Plaintiffs for the personal benefit and profit of Defendants.

142.    Defendants' actions were willful and intentional.

143.    Defendants' actions were wrongful and not justified by any privilege.

144.    In the absence of the aforesaid conduct, Plaintiffs would have been able to secure additional sales, business, and profits.

145.    As a result of the aforesaid conduct, Plaintiffs have suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to be proven with specificity at trial.

146.    The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

### Count III.  Tortious Interference With Prospective Business Relations
(Against all Defendants)

147.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

148.    Plaintiffs, each of them, have contractual relationships with their own customers and also customers of online resellers such as Amazon, eBay, Walmart, Etsy, Google, and Facebook to sell and distribute the Kurnow Copyright protected works along with other related products described above.

149.    Defendants were aware of Plaintiffs' contractual relationships with customers and prospective customers because they are all direct competitors (or owners of direct competitors) of Plaintiffs' respective online seller sites.

150.    Defendants have tortiously interfered with Plaintiffs' respective contractual relationships with their prospective business relations with consumers, by submitting improper and unlawful copyright infringement complaints to Amazon to get Plaintiffs' products delisted in an effort to divert business away from Plaintiffs for the personal benefit and profit of Defendants.

151.    Defendants have made at least 88 false, bad faith complaints to Amazon, eBay, Walmart, Etsy, and Just Host resulting in Plaintiffs' products being delisted temporarily and resulting in lost sales and lost business opportunities with prospective customers.

152.    Defendants have also tortiously interfered with Plaintiffs' respective contractual relationships with their prospective business relations with consumers, by filing improper trademark applications, enabling them to file improper and unlawful reports of trademark and copyright infringement to Amazon, eBay, Walmart, Etsy, and

Just Host to get Plaintiffs' products delisted in an effort to divert business away from Plaintiffs for the personal benefit and profit of Defendants.

153.   Defendants' actions were willful and intentional.

154.   Defendants' actions were wrongful and not justified by any privilege.

155.   In the absence of the aforesaid conduct, Plaintiffs would have been able to secure additional sales, business, and profits.

156.   As a result of the aforesaid conduct, Plaintiffs have suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to be proven with specificity at trial.

157.   The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

**Count IV.**
**Common Law Trademark Infringement and Unfair Competition**
**for the "Holy Land Imports" Tradename**
(Against Defendant Fenko)

158.   Plaintiffs reallege and reincorporate all the allegations contained in the preceding paragraphs as though fully set forth herein.

159.   Defendant Fenko's use of a confusingly similar wordmark to Plaintiffs' "Holy Land Imports" tradename constitutes common law trademark infringement and unfair competition, and has created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Plaintiffs for which Plaintiffs have no adequate remedy at law.

33

160.    Upon information and belief, Defendant Fenko acted with knowledge of or disregard for Plaintiffs' use of, and statutory and common law rights to, Plaintiffs' "Holy Land Imports" tradename, and without regard to the likelihood of confusion of the public created by Defendant Fenko's actions.

161.    Defendant Fenko's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' "Holy Land Imports" tradename, to the great and irreparable injury of Plaintiffs.

162.    As a result of Defendant Fenko's acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable.  At a minimum, however, Plaintiffs are entitled to injunctive relief, to an accounting of Defendant Fenko's profits, damages, and costs.  Further, in light of the deliberate and malicious use of a confusingly similar imitation of Plaintiffs' tradename, and the need to deter Defendant Fenko from engaging in similar conduct in the future, Plaintiffs are additionally entitled to punitive damages.

### Count V. Common Law Trademark Infringement and Unfair Competition for the "Al Jamal" Tradename
(Against Defendant Fenko)

163.    Plaintiffs reallege and reincorporate all the allegations contained in the preceding paragraphs as though fully set forth herein.

164.    Defendant Fenko's use of a confusingly similar wordmark to Plaintiffs' "Al Jamal" tradename constitutes common law trademark infringement and unfair

competition, and has created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Plaintiffs for which Plaintiffs have no adequate remedy at law.

165.    Upon information and belief, Defendant Fenko acted with knowledge of or disregard for Plaintiffs' use of, and statutory and common law rights to, Plaintiffs' "Al Jamal" tradename, and without regard to the likelihood of confusion of the public created by Defendant Fenko's actions.

166.    Defendant Fenko's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' "Al Jamal" tradename, to the great and irreparable injury of Plaintiffs.

167.    As a result of Defendant Fenko's acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable.  At a minimum, however, Plaintiffs are entitled to injunctive relief, to an accounting of Defendant Fenko's profits, damages, and costs.  Further, in light of the deliberate and malicious use of a confusingly similar imitation of Plaintiffs' tradename, and the need to deter Defendant Fenko from engaging in similar conduct in the future, Plaintiffs are additionally entitled to punitive damages.

**Count VI. <u>Common Law Trademark Infringement and Unfair Competition</u>**
**<u>for the "Jerusalem" Tradename</u>**
(Against Defendant Fenko)

168.    Plaintiffs reallege and reincorporate all the allegations contained in the

preceding paragraphs as though fully set forth herein.

169.    Defendant Fenko's use of a confusingly similar wordmark to Plaintiffs'

"Jerusalem" tradename constitutes common law trademark infringement and unfair

competition, and has created and will continue to create, unless restrained by this

Court, a likelihood of confusion to the irreparable injury of Plaintiffs for which Plaintiffs

have no adequate remedy at law.

170.    Upon information and belief, Defendant Fenko acted with knowledge of or

disregard for Plaintiffs' use of, and statutory and common law rights to, Plaintiffs'

"Jerusalem" tradename, and without regard to the likelihood of confusion of the public

created by Defendant Fenko's actions.

171.    Defendant Fenko's actions demonstrate an intentional, willful, and

malicious intent to trade on the goodwill associated with Plaintiffs' "Jerusalem"

tradename, to the great and irreparable injury of Plaintiffs.

172.    As a result of Defendant Fenko's acts, Plaintiffs have been damaged in an

amount not yet determined or ascertainable.  At a minimum, however, Plaintiffs are

entitled to injunctive relief, to an accounting of Defendant Fenko's profits, damages, and

costs.  Further, in light of the deliberate and malicious use of a confusingly similar

imitation of Plaintiffs' tradename, and the need to deter Defendant Fenko from engaging in similar conduct in the future, Plaintiffs are additionally entitled to punitive damages.

**Count VII.**
**Common Law Trademark Infringement and Unfair Competition**
**for the "Zytoon" Tradename**
(Against Defendant Vradii)

173.   Plaintiffs reallege and reincorporate all the allegations contained in the preceding paragraphs as though fully set forth herein.

174.   Defendant Vradii's use of a confusingly similar wordmark to Plaintiffs' "Zytoon" tradename constitutes common law trademark infringement and unfair competition, and has created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Plaintiffs for which Plaintiffs have no adequate remedy at law.

175.   Upon information and belief, Defendant Vradii acted with knowledge of or disregard for Plaintiffs' use of, and statutory and common law rights to, Plaintiffs' "Zytoon" tradename, and without regard to the likelihood of confusion of the public created by Defendant Vradii's actions.

176.   Defendant Vradii's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' "Zytoon" tradename, to the great and irreparable injury of Plaintiffs.

177.   As a result of Defendant Vradii's acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable.  At a minimum, however, Plaintiffs are entitled to injunctive relief, to an accounting of Defendant Vradii's profits, damages, and costs.  Further, in light of the deliberate and malicious use of a confusingly similar imitation of Plaintiffs' tradename, and the need to deter Defendant Vradii from engaging in similar conduct in the future, Plaintiffs are additionally entitled to punitive damages.

### Count VIII. <u>Common Law Trademark Infringement and Unfair Competition for the "Armenian Ceramic" Wordmark</u>
(Against Defendant Vradii)

178.   Plaintiffs reallege and reincorporate all the allegations contained in the preceding paragraphs as though fully set forth herein.

179.   Defendant Vradii's use of a confusingly similar wordmark to Plaintiffs' "Armenian Ceramic" wordmark constitutes common law trademark infringement and unfair competition, and has created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Plaintiffs for which Plaintiffs have no adequate remedy at law.

180.   Upon information and belief, Defendant Vradii acted with knowledge of or disregard for Plaintiffs' use of, and statutory and common law rights to, Plaintiffs' "Armenian Ceramic" wordmark, and without regard to the likelihood of confusion of the public created by Defendant Vradii's actions.

181.    Defendant Vradii's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' "Armenian Ceramic" wordmark, to the great and irreparable injury of Plaintiffs.

182.    As a result of Defendant Vradii's acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable.  At a minimum, however, Plaintiffs are entitled to injunctive relief, to an accounting of Defendant Vradii's profits, damages, and costs.  Further, in light of the deliberate and malicious use of a confusingly similar imitation of Plaintiffs' wordmark, and the need to deter Defendant Vradii from engaging in similar conduct in the future, Plaintiffs are additionally entitled to punitive damages.

### Count IX. Common Law Trademark Infringement and Unfair Competition for the "Prayer Shawl" Wordmark
(Against Defendant Vradii)

183.    Plaintiffs reallege and reincorporate all the allegations contained in the preceding paragraphs as though fully set forth herein.

184.    Defendant Vradii's use of a confusingly similar wordmark to Plaintiffs' "Prayer Shawl" wordmark constitutes common law trademark infringement and unfair competition, and has created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Plaintiffs for which Plaintiffs have no adequate remedy at law.

185.    Upon information and belief, Defendant Vradii acted with knowledge of or disregard for Plaintiffs' use of, and statutory and common law rights to, Plaintiffs'

"Prayer Shawl" wordmark, and without regard to the likelihood of confusion of the public created by Defendant Vradii's actions.

186.    Defendant Vradii's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' "Prayer Shawl" wordmark, to the great and irreparable injury of Plaintiffs.

187.    As a result of Defendant Vradii's acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable.  At a minimum, however, Plaintiffs are entitled to injunctive relief, to an accounting of Defendant Vradii's profits, damages, and costs.  Further, in light of the deliberate and malicious use of a confusingly similar imitation of Plaintiffs' wordmark, and the need to deter Defendant Vradii from engaging in similar conduct in the future, Plaintiffs are additionally entitled to punitive damages.

### Count X.  Violation of Minnesota Deceptive Trade Practices Act
### (Minn. Stat. § 325D.43 to .48)
(Against Defendants Fenko and Vradii)

188.    Plaintiffs reallege and reincorporate all the allegations contained in the preceding paragraphs as though fully set forth herein.

189.    Defendants Fenko and Vradii have been manufacturing and selling goods under confusingly similar names to Plaintiffs' tradenames and wordmarks causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendants Fenko and Vradii's goods, causing a likelihood of confusion as to

Defendants Fenko and Vradii's affiliation, connection, or association with Plaintiffs, and otherwise damaging the public.

190.    Minn. Stat. § 325D.44, subd. 1 provides that "[a] person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . causes likelihood of confusion or of misunderstanding as to the source sponsorship, approval, or certification of goods or services [or] causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another."

191.    Defendants Fenko and Vradii's unauthorized use of a confusingly similar imitation of the Plaintiffs' tradenames and wordmarks has caused and is likely to continue to cause substantial injury to the public and to Plaintiffs and constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of Minn. Stat. §§ 325D.43 to .48.

192.    Plaintiffs, therefore, are entitled to injunctive relief and to recover damages, including punitive damages, costs, and reasonable attorneys' fees. *See* Minn. Stat. § 325D.45.

193.    The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

**WHEREFORE,** Plaintiffs respectfully request that the Court:

    A.    Enter judgment in favor of Plaintiffs and against Defendants for all counts herein;

41

B.      Enter judgment in favor of Plaintiffs and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to be proven with specificity at trial;

C.      Grant Plaintiffs temporary, preliminary, and permanent injunctive relief to prevent Defendants' threatened, anticipatory, and future violation of Plaintiffs' rights;

D.      Award Plaintiffs their costs and disbursements herein, including reasonable attorney's fees, court costs, witness fees, and expenses;

E.      Award Plaintiffs pre-judgment interest in the maximum amount allowable by law; and

F.      Award such other and further relief as the Court deems just and equitable.

Dated: July 12, 2022.                    **TREPANIER MACGILLIS BATTINA P.A.**

                                         *s/ Nicholas N. Sperling*
                                    By: _____
                                         Nicholas N. Sperling, Atty. Reg. No. 391540
                                            *nsperling@trepanierlaw.com*
                                         Bryan R. Battina, Atty. Reg. No. 338102
                                            *bbattina@trepanierlaw.com*
                                         Anna M. Koch, Atty. Reg. No. 400144
                                            *akoch@trepanierlaw.com*
                                         8000 Flour Exchange Building
                                         310 Fourth Avenue South
                                         Minneapolis, MN  55415
                                         Phone:  612.455.0500
                                         Fax:  612.455.0501
                                         *www.trepanierlaw.com*

                                         **ATTORNEYS FOR PLAINTIFFS**
                                         **HOLYLANDMARKET.COM L.L.C. AND DR.**
                                         **RICHARD KURNOW**